23 C.C.P.A.(Patents)

### ALTVATER v. KNIGHT.

#### Patent Appeal No. 3560.

Court of Customs and Patent Appeals.
Feb. 17, 1936.

Rehearing Denied April 6, 1936.

John D. Rippey and Lawrence C. Kingsland, both of St. Louis, Mo. (John H. Cassidy, of St. Louis, Mo., of counsel), for appellant.

C. Russell Riordon and Charles E. Riordon, both of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There is a marked similarity between this case and that of Altvater v. Knight, 82 F.(2d) 608, 23 C.C.P.A.(Patents) ——, decided concurrently herewith, and we think they properly may be referred to as companion cases, although separate opinions are necessary.

The subject-matter in both cases relates to perforating devices for use in puncturing materials that enter into the manufacture of shoes, especially shoe uppers.

The patent to the party Altvater involved in this case is different from that involved in appeal No. 3559; the one here being patent No. 1,901,575, granted by the United States Patent Office March 14, 1933, upon an application, Serial No. 354,332, filed April 11, 1929. The application of Knight is the same as that there involved,

being the application, Serial 648,313, for reissue of patent No. 1,886,554, granted November 8, 1932, upon an application originally filed January 14, 1924.

In his reissue application Knight copied certain claims from the Altvater patent for the purpose of bringing about an interference, and an interference was declared on June 7, 1933, as to three of the claims which became the counts here involved, numbered respectively, 1, 2, and 3. These read:

"1. An ornamenting die of the character described comprising a rigid body, ornamenting die elements rigid with and projecting from said body, and a unitary combined stripper and gage device for the work supported by said body and having holes through which said die elements may operate and having a portion adapted to engage and locate the work in proper position for operation of said die elements.

"2. An ornamenting die of the character described comprising a rigid body, ornamenting die elements rigid with and projecting from said body, a stripper plate movably supported by the body and having holes through which said die elements may operate, and a gage for the work in unitary connection with said plate beyond said die elements.

"3. An ornamenting die of the character described comprising a rigid body, ornamenting die elements rigid with and projecting from said body, a stripper plate supported by said body and having holes through which said die elements may operate, and a gage in unitary connection with said stripper plate for engaging a portion of the work extending laterally beyond said body."

Following the opening of the preliminary statements, it appearing that Knight was the senior party, the Examiner of Interferences gave notice to Altvater to show cause why judgment upon the record should not be entered against him, and Altvater filed motion to dissolve the interference, alleging that Knight was not entitled to make the counts because of lack of disclosure.

The Examiner of Interferences sustained the motion as to counts 1 and 3, but denied it as to count 2. Knight appealed to the Board of Appeals as to counts 1 and 3. The board reversed the decision of the Examiner of Interferences as to those counts, and, upon return of the case, judgment was entered upon the record awarding priority to Knight upon all three counts. Altvater then appealed to the Board of Appeals upon all the counts; the judgment entered by the Examiner of Interferences was affirmed, and Altvater took the instant appeal to this court. All three of the counts are thus involved here, and the sole issue presented relates to Knight's disclosure.

In our decision in the companion case we have endeavored to give a nontechnical description of the devices of the respective parties, and it is believed unnecessary to repeat that description here in detail.

The features, or limitations, of the counts at issue which Altvater claims are not disclosed in Knight's application, are (in count 1) "a unitary combined stripper and gage device * * *," and "a portion adapted to engage and locate the work in proper position for operation of said die elements"; (in count 2) "a gage for the work in unitary connection with said plate * * *"; and (in count 3) "a gage in unitary connection with said stripper plate for engaging a portion of the work extending laterally beyond said body."

The second limitation above quoted from count 1, that of "a portion adapted to engage and locate the work in proper position for operation of said die elements," does not seem to us to differ in any material respect from the limitation in the count in the companion case, reading "a gage device * * * for gaging and locating the work properly with respect to said dies."

The brief on behalf of appellant emphasizes the fact that the limitation here reads "a portion [of a gage] adapted to engage and locate the work," and it is true that the expression in the count of the companion case is "a gage device * * * for gaging and locating * * *."

This seems to us to be a distinction in language with no practical difference in meaning or principle.

In our opinion in the companion case we state our reasons for believing this feature to be disclosed by Knight, and since the Knight application here is the same as the Knight application there, it is unnecessary here to repeat or add to what we said there.

The other limitation of count 1, that of "a unitary combined stripper and gage device," seems to be identical in meaning with the limitation contained in count 2, reading "a gage for the work in unitary

connection with said plate," and also identical with the "unitary" part of the limitation in count 3.

In all three of the counts the "unitary" element is a feature, and appellant urges its significance.

By reference to our description of the devices of the respective parties given in the companion case, the manner in which their gage plates are attached to the stripper plate may be seen. That of appellant is riveted to a lever arrangement underneath his stripper plate, the rivets extending through holes in the sides of the stripper plate and being slidable through such holes, while the gage plate of appellee is hingedly connected to the upper end of his stripper plate.

As to this limitation there appears to have been no disagreement between the Examiner of Interferences and the Board of Appeals. It is the only limitation in count 2 upon which appellant relies, and, as has been stated, the Examiner of Interferences held originally and throughout that Knight was entitled to make count 2. We concur with the tribunals in the belief that Knight's hinging arrangement may properly be held unitarily to combine the stripper plate and the gage plate. As is said by the Examiner of Interferences, "The term 'unitary' is very broad," and it is our view that even if we look to appellant's device for a construction of the term it could not be construed as meaning "integral," because his gage is not made integral with his stripper plate, in any strict sense of the word "integral."

The final limitation to be considered is that above quoted from count 3, "a gage in unitary connection with said stripper plate for engaging a portion of the work extending laterally beyond said body." Since the matter of "unitary connection" has been already passed upon, we need only concern ourselves with the question of whether Knight discloses an arrangement whereby a portion of the work extending laterally beyond the body of his device is engaged by his gage plate.

We understand that by "body" is meant the rigid body referred to in the first part of the count, and described in our opinion in the companion case as a body, or base, composed of a series of plates one upon top of the other rigidly attached together. This body is for the support of the die, or "puncturing," elements of the device and is surmounted by a stripper plate which is not a part of the body, and which may be wider than the body.

It is argued on behalf of appellant before us that the phrase "for engaging a portion of the work extending laterally beyond the said body" relates back to the word "gage" and that the requirement of the count, therefore, is a gage which will engage a portion of the work that extends laterally beyond the body. In other words, as we understand appellant's position, it is that the material which is to be punctured may be wider than the base, or body, but narrower than the width of the stripper plate, and, to meet the count, the gage must be of such a character as that it will engage the portion of the material extending laterally beyond the outer edges of the base, or body, element, although such portion may still rest upon the surface of the stripper plate.

Appellant also insists that the edge of Knight's gage plate is shown to be entirely within the line of the body portion of his device.

The Examiner of Interferences took the view of appellant as to this limitation, holding, in effect, that Knight's gage line being located directly above the body cannot engage a portion of the work extending laterally beyond the body.

The Board of Appeals, however, took the view that an *edge* of Knight's stripper plate, as shown in a figure of his drawings, is "properly designated a gage" and that it "engages a portion of the work, which portion extends beyond the *gage.*" (Italics ours.)

If appellant's interpretation of count 3 be correct, as it seems to us to be, the fact that Knight may show a gage that is capable of operating in the manner so described by the board does not necessarily, it seems to us, meet the requirement of the count. In other words, we are unable to discern just how a gage member which engages a portion of the work extending "beyond the *gage*" meets the requirement of a "gage * * * for engaging a portion of the work extending laterally beyond said *body.*" (Italics ours.) The limitation now under discussion doubtless is quite narrow, but nevertheless it is a limitation, and as such, under the familiar rule, may not be disregarded.

We have examined Knight's specification and drawings with much care in the

light of the argument and brief in his behalf, with the result that we are unable to find any feature disclosed which, in our opinion, may properly be held to respond to this element of the count.

It is, therefore, our conclusion as to count 3 that the decision of the Examiner of Interferences was correct and that the board erred in reversing it.

Accordingly, the decision of the Board of Appeals is modified, being affirmed as to counts 1 and 2 and reversed as to count 3.

Modified.

### On Petition for Rehearing.

On February 26, 1936, appellant Altvater filed a petition for rehearing in this case. Since our decision of February 17, 1936, awarded count No. 3 to him, it is assumed that the petition for rehearing was intended to relate only to counts 1 and 2, although it is not so specifically stated.

The petition directs attention to certain errors alleged to have been made in our description of the Altvater device defined in the particular Altvater patent, 1,901,575, involved in this interference, it being different from the one involved in the companion case, and it is suggested that our misapprehension of Altvater's structure led to an inaccurate conclusion "in respect of the interpretation of a significant feature of the counts." The feature so alluded to, as we understand it, is that defined in count 1 (see original opinion, supra), by the clause, "a unitary combined stripper and gage device."

In the petition it is pointed out that, by reference, we incorporated into this case the description given of the Altvater device involved in the companion case, in which we said, "Altvater's gage plate stands above and normally out of contact with the stripper plate," and the petition, stating that this is incorrect as regards the relationship of the gage device and stripper plate, says: "In the Altvater patent involved in this appeal, as distinguished from the Altvater patent in the appeal No. 3559, the gage device and stripper are physically one part—integral and unitary —as will be understood by reference particularly to Fig. 4 of the drawing (Rec. p. 42A) and the description in the specification of the patent (p. 2, line 6 et seq.) (Rec. p. 42C)."

It is also alleged that our statement that the gage plate of Altvater is attached to his stripper plate by being "riveted to a lever arrangement underneath his stripper plate * * *," while true of the structure defined in the companion case, is not true of Altvater's structure here involved. Upon this point the petition says: "The Altvater construction involved in this appeal consists of a single plate 12, one edge 18 of which is conformed to constitute the gage, so that the same plate that is defined as the stripper is so formed as to constitute the gage device. When the die is brought to the work this single plate, having the edge 18, engages the work, and the work is then moved until the edge 18 physically engages and locates the applique strip, as described in the patent (p. 2, lines 10 to 34) (Rec. p. 42C). As the unitary combined stripper plate and gage device move together they are not moved relative to each other, and no lever arrangement is involved in their operation."

In a third point the petition challenges our holding that the Altvater gage "is not made integral with his stripper plate, in any strict sense of the word 'integral,'" and, claiming that "the gage is but an edge of the stripper plate," insists that the gage and the plate "are truly unitary in the sense that they are physically one part or unit."

The errors so alleged to have been made in the description of appellant's structure may be conceded, but they are wholly immaterial so far as the conclusion upon the merits of the case is concerned.

The sole question here is that of the right of the party Knight to make the claims which constitute the counts. In the counts we find no ambiguity which requires the application of other than the general rule to the effect that such counts should be broadly interpreted. In addition to the drawings, we have had before us working models of the devices of the respective parties as a part of the record of the case coming to us from the Patent Office. From the record as a whole we remain convinced that, under proper interpretation of the counts, Knight's right to make them is clear.

The petition for rehearing is denied.

Denied.